MARY A. McGINN *vs.* MARY L. McGINN *et al.*

JUNE 21, 1929.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Barrows, and Murdock, JJ.

BARROWS, J. Mary A., widow of Albert T. McGinn, brought this bill in equity seeking specific performance of an agreement made by her with Mary L., Cora E. and Helen T. McGinn, sisters of Albert T. McGinn, and Charles B. Deignan, executor of the will of Albert T. McGinn and brother of the complainant. The agreement was in compromise of a threatened contest by the widow over the will of her husband. The contents and meaning of the agreement of compromise were fully known to and understood by all parties thereto.

Respondent sisters answered, including a cross bill, praying that said agreement be declared null, void and cancelled on the ground that it was executed by reason of their

mistake of fact induced by the wrongful conduct of complainant. The case was heard on oral testimony, on issues of fact, and from a decree dismissing complainant's bill and granting the prayer of the cross bill, complainant is here on appeal.

A careful review of the testimony does not convince us that the trial court lost sight of any important evidence or misconstrued its bearing. It correctly viewed the case as being "to a considerable extent one of law." Most of the facts are not disputed.

Albert T. McGinn was seriously ill on May 14, 1928. The late Charles H. Kernan, Esq., was called in and drew a will. Testator's estate consisted of real estate taxed for $16,000, personal property inventoried at $5,000 and as testator told Kernan an insurance policy for $10,000 in the Penn Mutual Life Insurance Co. payable to his estate. It may be stated at this point that the Insurance Company has paid the amount due on said policy, of approximately $9,000, into the hands of Harold B. Tanner, Esq., trustee, who holds it under a decree of the Superior Court to await the result of the present litigation.

By the terms of the will all property after payment of debts was left in equal shares to the widow and testator's three sisters above named. Albert T. McGinn died May 21, 1928, childless. The widow was not satisfied with the terms of the will. On June 14 she showed the sisters documents relating to property her husband possessed including an unexecuted assignment of the insurance policy to Mary L. McGinn, dated in 1916, and explained that the assignment had not been completed because her husband was unable to get other insurance for the wife's benefit and that he had left the policy payable to his estate. The widow expressed her intention to contest the will and expose certain family dealings among the McGinn's unless she received fifty per cent of the estate.

The parties met to talk over a compromise and the widow in answer to the sisters' specific question assured them that

she had verified from the insurance agent that no assignment existed and that the policy was payable to the estate. Her statement was true and the agent's assurance was accurate according to his records. When, however, the agent communicated with the company concerning payment of the loss he learned that an assignment of the policy had been executed in 1919 to Mary L. McGinn and was on file with the company. On June 15, 1928, he informed the widow that Mary L., the sister, was the beneficiary under the assignment. The widow expressed doubt about the correctness of the information and asked the agent to verify it and on the morning of June 20, on receipt of a photostatic copy of the assignment, the agent exhibited the same to the widow. Her brother, the executor of the will, also was informed of the assignment at about this time. No information of it was given to Mr. Kernan. On June 20 Kernan acting for all parties, after explaining their respective rights on the facts as he understood them, started the drafting of the agreement which complainant is seeking to enforce. Out of "abundant caution" he referred therein to the policy "however payable." The widow on seeing the assignment told the insurance agent that a family settlement was being worked out and asked him to wait for a few days "for the agreement to be signed" before calling the sisters' attention to the assignment. The agent accommodatingly did so. The nature of the settlement being made between the parties was not communicated to him. By June 23 Kernan's agreement had been drawn and was signed by the widow. After submission to the sisters for a couple of days it was signed by them on June 26, after, as they claim, being again assured by Kernan that the policy was payable to the estate because he had seen it.

While there is language in the agreement that might, in the absence of other evidence furnish the basis for an inference that respondents knew there was a question as to whom the policy was payable, the evidence is overwhelming that they actually believed it to be payable to the estate at

the time the agreement was signed.  We can not believe they had any doubt about it or reason to investigate.  It is hard to believe that Mary L. McGinn knowingly would have given up her sole right to the policy to protect her family's reputation from a threatened scandal, which at its worst appears to have been somewhat shadowy.

On the same day the agreement was signed, to wit, June 26, the will was probated without opposition.  On July 9 a brother of respondents, who was asserted to be the one around whom the scandal if established would center, disliking certain language of the agreement, started an investigation which resulted in discovery of the assignment and communication of knowledge thereof on July 12 to Mary L. McGinn.  She then first learned that she alone was entitled to the proceeds of the policy under the assignment.  On July 13 respondents notified complainant that they had just learned the facts and having been misled into signing the Kernan agreement that they repudiated it.

At this point Mr. Kernan, seeing that he could not properly represent any of the parties, ceased to act as counsel and sent complainant to Mr. Cooney and her brother, the executor, to Mr. McGovern.  On July 17, the present bill was brought to enforce the agreement.  The forty days within which appeal from probate of the will could be taken expired August 5.  No appeal was taken.

Complainant correctly asserts that the decision must be based upon the facts as they were known to the parties on or prior to June 26.  A subsequent change of mind on the part of any of the signatories could not affect the validity of the agreement.  The trial court correctly stated the law governing the case as found in 2 Pom. Eq. Juris, 4th ed., 1738, § 850.  Family compromise agreements when there are no elements of fraud or overreaching are favored even though final results may be different from those anticipated. This is particularly true where all parties thereto have the same knowledge or means of knowledge of the facts.  12 C. J. 350.  In applying the law the trial court held that the

conduct of complainant showed not only nondisclosure of facts known to her and unknown to respondents but active steps on complainant's part to prevent the knowledge she had acquired from coming to respondents prior to signing the agreement.

Complainant's contention bluntly put is that the parties dealt at arm's length, that the same knowledge possessed by the widow could have have been acquired by respondents had they called upon the insurance agent, and that no duty to disclose the assignment to them rested upon her. She urges correctly that mere silence in the absence of a duty to speak is not fraudulent. 26 C. J. 1069, cf. *O'Leary* v. *Tillinghast*, 22 R. I. 161, and that even meditated silence may not be fraudulent. *Frederick* v. *Sherman*, 89 Ore. 187. Many of the "silence" cases rest on the proposition that one party has been remiss in inquiry or has not been led by the other into failure to investigate. Conceding that complainant occupied no fiduciary relation to respondent sisters and originally owed no duty of disclosure, it may be queried in passing whether the same is true of the executor, who was a party to the agreement and who shared knowledge of the true fact with his sister.

Even, however, when persons deal with each other at arm's length, if they make statements of fact as distinguished from statements of opinion, the statements should be true. If intentionally untrue and material they subject the falsifier to an action of deceit or may vitiate an agreement predicated thereon. Sound business requires truthfulness at least to this extent. *Hunt* v. *Barker*, 22 R. I. 18; *Smith* v. *R. I. Co.*, 39 R. I. 146. The materiality to the present agreement of the fact as to the beneficiary of the policy is not open to doubt.

The widow is not chargeable with fraudulent conduct by reason of her statement to respondent sisters on June 14. Although her representation was untrue in fact it was not known to be so. 2 Pom. Eq. Juris., 4th ed., § 888, p. 1838-9. Although some authorities hold that a compromise agree-

ment executed under an innocent mistake of fact to which the other party is accessory, may be set aside in equity, *Gordon* v. *Gordon*, 3 Sw. Ch. 400, *Fane* v. *Fane*, L. R. 20 Eq. 698, respondents' position here is much more strongly buttressed. They relied upon complainant's incorrect statement. Indeed inquiry of the agent would have given them no more accurate information on June 14. Complainant had made a positive statement of fact believing it to be true. When within a few days she learned that it was untrue the law no longer left her free if she so chose to keep silence in her negotiations with respondents. 2 Pom. Eq. Juris., 4th ed., § 888, p. 1839. They were acting as she must have known on the truth of her assertion that the policy was payable to the estate. It became her duty to make known the true fact. When thereafter by silence she permitted agreement to be executed without a disclosure of her formerly innocently incorrect statement she became guilty of, at least, passively fraudulent conduct. *Reynell* v. *Sprye*, 1 De Gex. M. & G. 660; *Davies* v. *London and Provincial Marine Ins. Co.*, L. R. 8 Ch. Div. 469 (1878); *Palmiter* v. *Hackett*, 95 Ore. 12; *Porter* v. *Beattie*, 88 Wis. 22; 2 Pom. Eq. Juris., 4th ed., §§ 888, 895.

Complainant's conduct after June 14, in addition, was actively fraudulent in pressing for execution of the agreement in haste and under circumstances calculated to defeat investigation. She concealed the true fact from the attorney, who was drawing the agreement and acting in good faith toward all parties, leaving him in a position to honestly assure respondents as late as June 26 that the policy was payable to the estate. If Mr. Kernan assured respondents that he had seen the policy and that it was payable to the estate we have no doubt it was true, for the original policy was so payable and Mr. McGinn told him on May 14, 1928, that it so continued. We find in the record no reflection on Mr. Kernan's integrity. Complainant also actively induced the insurance agent, who had learned the true fact about June 15, to delay communicating it to respondents before signing the agreement.

242

The complainant's appeal is denied and dismissed. The decree appealed from is affirmed, except that the date "January 10, 1929" fixed in the third paragraph of said decree as the time when Harold B. Tanner, trustee of the funds received from the Insurance Company, shall pay same to Mary L. McGinn should be amended to read "on or before July 1, 1929." A decree may be entered by the Superior Court modifying the decree appealed from only as to date of payment. The decree as thus modified is affirmed, and the cause is remanded to the Superior Court with direction to enter a decree modifying the decree appealed from by changing the date of payment to Mary L. McGinn from "January 10, 1929," to "on or before July 1, 1929."

Cooney & Cooney, for complainant.

Elmer E. Tufts, Jr., Ronald B. Smith, Edwards & Angell, for respondents.