**Velma B. SIVERT et al., Appellants,**

v.

**CONTINENTAL OIL COMPANY et al.,
Appellees.**

**No. 15162.**

Court of Civil Appeals of Texas,
San Antonio.

May 16, 1973.

Rehearing Denied June 27, 1973.

Second Motion for Rehearing Overruled
July 25, 1973.

Johnson & Davis, Harlingen, Steinle & Straus, Jourdanton, for appellants.

Harry G. Dippel, Ben H. Schleider, Jr., Houston, Paul H. Smith, San Antonio, Robert L. Ramsey, Dallas, for appellees.

KLINGEMAN, Justice.

This is a case involving waterflood operations in the Velma (Escondido) Field in Atascosa County, Texas. The original suit was brought by ten named plaintiffs against numerous defendants, seeking a wide variety of relief in eight separate counts, the composition of plaintiffs and defendants varying among the eight separate counts.[1] The case was originally

---

1. The eight counts may be summarized as follows: Count One seeks damages for fraud in obtaining execution from Susanoil, Inc., and Harry Jacobs of the unitization agreement wherein they agreed to let Continental use their oil production equipment with the understanding that all signers of the agreement were required to do likewise, when in fact Continental allegedly had secretly released another leasehold owner from the rent-free provision and was allowed to take most of such equipment off the land. Count Two seeks damages against Continental and W. H. Doran because of their alleged failure to conduct and maintain the secondary recovery operations in good faith, and in a prudent manner, and in accordance with the unitization agreement. Count Three seeks exemplary damages in the amount of $500,000 against Continental in that its wrongful acts complained of in Count One were willful and fraudulent. Count Four seeks damages against Doran and Pensco, Inc., for conversion through wrongful production and sale of oil that did not belong to them. Count Five seeks $50,000 exemplary damages against Doran because what he did was willful and fraudulent. Count

docketed as Cause No. 5928. Count Six was severed out of the main cause, docketed as Cause No. 5928–A, settled by the parties, and a final judgment entered thereon. The remainder of the counts were set for separate trials, with Counts One, Two, and Three set for jury trial, and Counts Four, Five, Seven and Eight set for trial to the court. The nonjury trials were held during the week of May 15, 1972, and the jury trials were held during the week of May 22, 1972. Counts One and Three were severed out and docketed as Cause No 5928–B, a judgment entered thereon, and is now on appeal to this Court, and is the subject of our opinion in Cause No. 15139, styled Susanoil, Inc. et al. v. Continental Oil Company. A jury was selected to try Count Two, which involved only defendants W. H. Doran and Continental Oil Company, and during the presentation of plaintiffs' evidence and prior to resting their case, the plaintiffs took a nonsuit as to W. H. Doran. After the evidence for the plaintiffs was concluded and plaintiffs rested their case, Continental moved for an instructed verdict, which was granted by the trial court. Thereafter, on June 7, 1972, the trial court entered a final judgment that plaintiffs take nothing by their suit against defendants. This judgment disposed of Counts Two, Four, Five, Seven and Eight. However, thereafter on August 14, 1972, plaintiffs, under the provisions of Rule 353(c), Texas Rules of Civil Procedure, limited their appeal by eliminating from the scope of the appeal Count Two, and plaintiffs do not appeal from that part of the judgment in Cause No. 5928, granting Continental's motion for instructed verdict on said Count Two.

It is seen, therefore, that the judgment involved Counts Two, Four, Five, Seven and Eight, but appellants make no complaint on this appeal with respect to Counts

Two, Five, Seven and Eight; and the scope of this appeal, in reality, is restricted to Count Four.

Count Four alleges that on December 9, 1967, appellee Doran took over operations of the Velma (Escondido) Field in Atascosa County, Texas, from Continental; that shortly thereafter, Doran secretly stopped all waterflood operations without giving notice as required by the unitization agreement; that under the terms of the unitization agreement, such unitization agreement automatically terminated if the operator ceased waterflooding for more than ninety consecutive days; that accordingly, the unitization agreement terminated not later than April 1, 1968; that after this date, Doran and Pensco, Inc.,[2] were willful trespassers on appellants' property; and that Doran and Pensco are jointly and severally liable for conversion of all oil produced and sold from the field after this date. Appellants seek to recover the value of the oil allegedly converted.

In 1962, all mineral interest owners in the Velma (Escondido) Field in Atascosa County, Texas, entered into a unitization agreement with Continental for the purpose of Continental conducting a secondary recovery for oil through means of waterflooding. Continental was the operator thereunder until December 9, 1967. On the prior date of November 20, 1967, Continental assigned all its interest in and to the unitization agreement to Doran, but reserved a 65% production payment to be paid free and clear of all the expenses. On the same date of November 20, Continental assigned this reserved production payment to Pensco.

The applicable provision of the unitization agreement herein involved is as follows:

"E. *Term*—From and after the effective date, this agreement shall remain in

Six seeks damage of $1,900 against Continental and Doran for injury to the land of one of the plaintiffs. Count Seven seeks to remove the unitization agreement as a cloud on plaintiffs' title. Count Eight seeks a declaratory judgment de-

claring rights and legal relationships of the parties.

2. Pensco, Inc., was the holder of a production payment assigned to it by Continental.

force for and during the time that Unitized Substances are produced from the Unitized Area, and as long as Continental, its successors and assigns, are conducting waterflood and secondary recovery operations on the Unitized Area without cessation of more than ninety (90) consecutive days, and in the event of cessation of said operations or production as aforesaid, this agreement shall remain in effect for a reasonable period of time to permit the dismantling and removal of operation equipment by Continental, its successors and assigns."

At the request of appellants, the trial court made extensive findings of fact and conclusions of law. Those pertinent to this appeal may be summarized as follows: (a) Doran succeeded Continental as operator of the Velma (Escondido) Unit under the terms of the agreement on December 9, 1967. (b) Doran operated the Velma (Escondido) Unit in a reasonable manner and in accordance with good field practice, and the terms and provisions of the unitization agreement, from December 9, 1967, to November 27, 1971. (c) Doran was operator of the Velma (Escondido) Unit and conducted secondary recovery operations without cessation until November 27, 1971. (d) Doran was operator of the Velma (Escondido) Unit and conducted waterflood operations without cessation until November 27, 1971. (e) From December 9, 1967, until November 27, 1971, secondary oil as defined in the unitization agreement was continuously produced without significant cessation. (f) In compliance with the terms and provisions of the unitization agreement, Doran conducted secondary recovery operations continuously from December 9, 1967, until November 27, 1971. (g) In compliance with the terms and provisions of the unitization agreement, Doran conducted waterflood operations continuously from December 9, 1967, until November 27, 1971. (h) Doran took no oil or other property from the Velma (Es-

condido) Unit leases or lands which did not belong to him. (i) Pensco took no oil or other property from the Velma (Escondido) Unit leases or lands which did not belong to it. (j) No plaintiff has suffered damages as the result of any action or omission of Doran. (k) No plaintiff has suffered any damages as the result of any action or omission of Pensco. (l) During the pertinent period of time involved in this suit, Pensco was never in possession or control of the lands, leases or personal property covered by the unitization agreement. (m) During the period of time involved in this suit, Pensco has never operated the Velma (Escondido) Unit or any leases or wells thereon. (n) Neither Doran nor Pensco received proceeds of oil production from the Velma (Escondido) Unit belonging to any other person, firm or corporation.[3]

Appellants bring forth sixteen points of error, which basically fall into these general areas: (a) those asserting factual and legal insufficiency of findings of fact; (b) error of the court in not ordering an accounting; (c) error of the court in not sustaining plaintiffs' exception to certain of the trial court's findings of fact and conclusions of law; (d) error of the court in taxing costs; (e) error of the court in allowing expert testimony as to the meaning of the words "waterflood" and "secondary recovery" operations.

The trial court's findings of fact will be upheld on appeal unless manifestly erroneous and will be overruled by an appellate court only when they are not supported by any evidence of probative value, or are so against the great weight and preponderance of the evidence as to be manifestly wrong. Cortez v. Cortez, 457 S.W.2d 131 (Tex.Civ.App.—San Antonio 1970, no writ); Heard v. City of Dallas, 456 S.W. 2d 440 (Tex.Civ.App.—Dallas 1970, writ ref'd n.r.e.); Dyer v. Caldcleugh & Powers, 392 S.W.2d 523 (Tex.Civ.App.—Cor-

3. The trial court made certain findings of fact and conclusions of law pertaining to Continental, which will be hereinafter mentioned.

pus Christi 1965, writ ref'd n.r.e.); Bavousett v. Bradshaw, 332 S.W.2d 155 (Tex. Civ.App.—Amarillo 1960, writ ref'd n.r.e.); Keeton v. Gillam Soap Works, 215 S.W.2d 675 (Tex.Civ.App.—Amarillo 1948, writ ref'd n.r.e.).

We are met at the outset by Continental's contention that it is not properly involved in this appeal; and that no relief was sought against it in the matters involved in the nonjury trials; and the nonjury trials were tried on this basis. The trial court agreed with this contention, and counsel for appellants does not seriously contest such contention.[4]

■ From a review of the entire record, the pleadings of the plaintiffs, plaintiffs' points of error on this appeal, and the briefs of counsel, we conclude that the contention of Continental in this regard and the trial court's position were correct. In any event, there is no evidence that Continental failed to comply with the terms of the unitization agreement pertaining to oil production, secondary recovery operations and waterflood operations from the inception of the unitization agreement until December 9, 1967, the date which Doran succeeded Continental as operator of the Velma (Escondido) Field. The trial court's finding that Continental Oil Company operated the Velma (Escondido) Unit in accordance with the terms and provisions of the unitization agreement from the time of inception of the unit until December 9, 1967, is not against the great weight and preponderance of the evidence, and is sufficiently supported by the evidence.[5]

The trial court found that the unitization agreement terminated sixty days after September 27, 1971, and all parties agree that such unitization agreement terminated not later than that date. The basic dispute herein involved arises from appellants' contention that such unitization agreement terminated at an earlier date. Appellants assert that the unitization agreement terminated on or about April 1, 1968, which they say was the ninety-first consecutive day after waterflooding ceased, and that appellants were entitled to the value of all oil produced and sold after that date.

The term provision of the unitization agreement, hereinbefore set forth, lays

4. The comments and remarks of counsel and the court during the process of the nonjury trial reveal the following:

Counsel for plaintiffs: "I want the Court to understand this is [sic] connection with this case that is on trial, basically this is the trial between the plaintiffs and Doran and Pensco. If there is a claim in which relief is being sought against Continental on these four counts that we're involved in, I can't think of it right now because continental parted with their title, as I understand their possession [sic], on December 9th of 1967." (S.F. 38)

*    *    *    *    *

The court: "Well, Continental is not involved in this count [Count Four] . . . ." (S.F. 45)

Counsel for plaintiffs: "Continental is not involved, but the Unitization Unit is involved." (S.F. 45)

*    *    *    *    *

Counsel for plaintiffs: "Well, I'm not going to assert anything [against Continental] as far the pleadings of these counts [the nonjury counts] . . .

I have not made a claim against Continental on this phase of the case on those particular counts . . . . ." (S.F. 58)

*    *    *    *    *

The court: "As I understand it Continental is not involved in this particular part of the hearing." (S.F. 96)

*    *    *    *    *

The court: "The Court has read this Count 4 on several occasions and has two pages of handwritten notes, and the Court is of the opinion that Continental is not involved." (S.F. 97)

*    *    *    *    *

The court: " . . . as the Court reads Count 4 Continental is not involved in any respect whatsoever. It's purely allegations against the defendant Doran and defendant Pensco." (S.F. 98)

5. In its findings of fact, the trial court found that the defendant, Continental Oil Company, operated the Velma (Escondido) Unit in accordance with the terms and provisions of the unitization agreement from the time of inception of the unit in 1963, until December 9, 1967.

down a three-fold test for determining the termination of the agreement. Termination will occur if and when the operator fails for more than ninety consecutive days to do any one of three things: (1) produce oil from the unit; (2) conduct waterflood operations in the unit; and (3) conduct secondary recovery operations in the unit. There is no contention here made that the operator did not produce oil in accordance with the terms and provisions of the unitization agreement. The unitization agreement itself defines primary oil as the first 30,000 barrels of oil produced by any recovery method (primary or secondary), and secondary oil as all production obtained from the unit by any method of operation (primary or secondary) after the effective date of the agreement, or after primary oil has been produced, whatever condition occurs at the later date. The evidence is undisputed that when Doran took over operations of the unit, about 275,000 barrels of oil had been produced from the Escondido sand. It is thus seen that requirements Nos. 1 and 3 are not here in dispute. The only question here involved is whether Doran conducted waterflood operations without a cessation of more than ninety days until he finally abandoned the unit in accordance with its provisions on November 27, 1971.

The terms "primary production," "secondary recovery," and "waterflood" are not terms of ordinary usage. Williams & Meyers Oil & Gas Law, Manual of Terms, p. 344, defines primary production as the production from a reservoir by primary sources of energy, that is, from natural energy in the reservoir when it is in an early stage of production with little loss of pressure, and with most wells still flowing. Said manual further states that secondary recovery, broadly defined, includes all methods of oil extraction in which energy sources extrinsic to the reservoir are utilized in the extraction; that the term is usually defined somewhat more narrowly as a method of recovery of hydrocarbons in which part of the energy employed to move the hydrocarbons through the reservoir is applied from extraneous sources by the injection of liquids or gases into the reservoir; that the fluid (water, gas or air) is injected into the formation through an input well, and oil is removed from surrounding wells; that in a typical waterflood project, there is an initial water injection period of several months known as the fill-up before additional oil is forced into the producing wells; that the end of this period is marked by a pick up in oil production which is followed by a rapid increase in oil recovery; and that combined oil and water production continues thereafter with the oil gradually decreasing and the water increasing until the economical limit of operations is reached.

The basic dispute between appellants and appellees is just what constitutes waterflooding. It is appellants' position that there must be continuous injection of water into the reservoir, and that at all times there must be both water injected into one bore or well, and oil being produced from another bore or well; that the evidence shows that Doran did not inject water for a period in excess of ninety days, which occurred at least by April 1, 1968; and that on such date, the unitization agreement terminated by its terms. Appellees assert on the other hand that waterflooding consists of an initial injection of the necessary amount of water to create sufficient energy or pressure to cause the oil to be produced; that the tremendous pressure and weight of the water is the force that pushes the oil to the recovery well bores; that there is no need of continuous injection of water; and that as long as the energy is present, waterflood operations are being conducted.

Three experts testified at the trial in this regard. All appear in general agreement that waterflooding consists of the injection of water by an input well into an oil-bearing strata to force the movement of oil towards other wells or bores so that it will be produced. The basic conflict in their testimony appears to be the length of

time water injection may be stopped and still be waterflooding.

W. H. Doran, the operator, testified that he is a petroleum engineer; that he has been in the oil business since 1947; and that during his career he has been engaged in about six waterflood operations. He testified that constant injection of water is not necessary to conduct a waterflood operation; that he had determined that Continental had injected too much water into the reservoir and that it was overpressurized; that overpressurization can damage a field; that he continued to monitor the pressure in the reservoir, and that the pressure remained adequate; and that waterflooding was still being performed in the field at the time that he abandoned it in November, 1971.

W. H. Price, a witness for appellees, testified that he is a consulting petroleum engineer; that he has worked in many waterflood operations; that a waterflood begins when the injection of water into the producing formation or oil-bearing formation begins; that the waterflooding will terminate at such time as the input energy is depleted; that in his opinion the reservoir was completely repressured, and that the energy was in place and only needed to be used; that the fact that the No. 5 well would still overflow in November, 1971, indicated to him that there was a very stable and adequate bottomhole pressure; that there is danger in overflooding a field, and that you can ruin your displacement process and cause premature abandonment of a field by injecting too much water; that he would say that it is common practice in a waterflood of the size of the Velma Field to cease water injection for a period of four years; and that from December 9, 1967, to November 27, 1971, all the oil Doran produced from the Velma Field was secondary oil; and that secondary operations continued through 1971.

Don McLelland, a witness for appellants, testified that he is a consulting petroleum engineer; that he has been engaged in numerous waterflood operations;[6] that it is conceivable to conduct a waterflood operation without injection for a short period of time, and that this is done as a matter of general practice for one or two months; that he has never seen a field shut down as long as Velma was and yet be considered as operation of a waterflood.

It is seen that all experts agreed that waterflood operations can be conducted without injection of water for a period of time, but differ as to this period of time.

■ The trial court was the judge of the credibility of the witnesses and the weight to be given to their testimony. From the review of the entire record, we cannot say that there is no evidence to support the trial court's material findings,[7] hereinbefore set forth, or that such findings are against the great weight and preponderance of the evidence. Such findings are sufficiently supported by the evidence.

■ Appellants' points of error that the trial court erred in refusing to sustain certain exceptions to the findings of fact and conclusions of law made by the trial court are without merit. Rule 307, T.R.C.P., does not provide for the filing of exceptions to findings of fact and conclusions of law. It provides that a party claiming that the findings made do not support the judgment may except to the judgment and thereby preserve his right to contend on appeal that the findings have no support in the evidence or are contrary to the great weight and preponderance of the evidence by including proper points or cross-points of error in his brief in the Court of Civil Appeals. Cowling v. Colligan, 158 Tex. 458, 312 S.W.2d 943 (1958). We have heretofore held that there is ample evi-

6. McLelland testified that waterflooding by means of definition is the injection of water into a subsurface porous formation for displacement of oil to another well bore where it can be recovered.

7. We have not reviewed and express no opinion regarding those findings not material to this appeal.

dence in the record to support the material findings of fact which the trial court made.

 We overrule appellants' contention that the trial court erred in allowing expert testimony on the meaning of the terms "waterflood" and "secondary recovery." Two petroleum engineers, Doran and Price, testified for appellees as to the meaning of such terms, and appellants made no objection to such testimony. In addition, appellants put on their own expert, Mr. McLelland, a petroleum engineer, and elicited testimony from him on the same matter. Under such circumstances, appellants are in no position to urge error in this regard. 23 Tex.Jur.2d, Evidence, Section 208; City of Sweetwater v. McEntyre, 232 S.W.2d 434 (Tex.Civ.App.— Eastland 1950, writ ref'd n.r.e.). Further, the testimony was properly admissible. The terms "secondary recovery" and "waterflood" are not terms of common usage, and are technical terms peculiarly applicable to the oil industry. The Texas courts have consistently permitted this type of testimony. Missouri Pacific Railroad Co. v. Trautmann Bros., 301 S.W.2d 240, 242 (Tex.Civ.App.—San Antonio 1957, writ ref'd n.r.e.); Carothers v. Finley, 209 S. W. 801 (Tex.Civ.App.—El Paso 1919, writ ref'd). This evidence was not parol evidence tending to vary the terms of the written agreement, but was explanatory of such technical terms used in the unitization agreement.

We also overrule appellants' points of error pertaining to an accounting. In its findings of fact, the trial court found that neither Doran nor Pensco took any oil or other property from the Velma (Escondido) Unit leases or lands which did not belong to them, and that neither Doran nor Pensco received proceeds of oil production from such unit belonging to any other person, firm or corporation.[8] These findings

are sufficiently supported by the record, and no accounting is due plaintiffs.

The trial court did not err in assessing costs against plaintiffs. No relief sought by plaintiffs on the matters here under appeal was obtained by them. Costs are normally awarded the prevailing party, and there is no basis here for taxing costs against appellees. The trial court has wide discretion in assessing costs, and no abuse of discretion is here shown.

All of appellants' points of error have been considered, and all are overruled. The judgment of the trial court is affirmed.

---

8. In its conclusions of law, the court found that both Doran and Pensco did not convert, remove or dispose of oil or other property belonging to others from the lands or leases covered by the unitization agreement.