**SUSANOIL, INC., et al., Appellants,**

v.

**CONTINENTAL OIL COMPANY, Appellee.**

No. 15364.

Court of Civil Appeals of Texas,
San Antonio.

Jan. 22, 1975.

Rehearing Denied Feb. 19, 1975.

Johnson & Davis, Harlingen, Leon F. Steinle, Jourdanton, for appellants.

Harry G. Dippel, Ben H. Schleider, Jr., Houston, for appellee.

KLINGEMAN, Justice.

This is an appeal from a summary judgment entered in favor of defendant, Continental Oil Company, in a suit filed by plaintiffs, Susanoil, Inc. and Harry Jacobs, seeking damages, actual and exemplary, for alleged fraud in the obtaining by defendant of a unitization agreement for waterflood operations in the Velma (Escondido) Field in Atascoas County, Texas. The herein suit involves Counts One and Three of an original suit brought by ten named plaintiffs against numerous defendants seeking a wide variety of relief in

eight separate counts.[1] This court has had two previous appeals involving various phases of the original suit and, for a more complete background, see Susanoil, Inc. et al. v. Continental Oil Company, 516 S.W. 2d 260 (Tex.Civ.App.—San Antonio 1974, no writ); Sivert v. Continental Oil Company, 497 S.W.2d 482 (Tex.Civ.App.—San Antonio 1973, writ ref'd n.r.e.). Counts One and Three are the only counts not previously disposed of.

Plaintiffs' first point of error asserts that the trial court erred in granting defendant's motion for summary judgment because plaintiffs' pleadings stated a cause of action for damages for fraud which limitations did not bar as a matter of law, and the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, disclosed the existence of disputed fact issues.

In support of their first point of error,[2] plaintiffs assert: (1) during the negotiations leading to the execution by plaintiffs of the Unitization Agreement, Continental's representative assured plaintiffs that all owners of well operating equipment would be equally treated with respect to the Unitization Agreement and in connection with the transfer to defendant of the right, use and possession of the removable well operating equipment. (2) Such representations were false in that by letter dated October 3, 1962, and accepted on October 19, 1962, a separate undisclosed agreement was made with the Bering group releasing their well equipment and affording them special considerations with respect to well plugging. (3) The representations were made with the intent to induce the plaintiffs to execute the Unitization Agreement and thereby assign their leases and well equipment rent-free to defendant. (4)

---

1. The eight counts may be summarized as follows: Count One seeks damages for alleged fraud in obtaining execution from Susanoil, Inc., and Harry Jacobs of the Unitization Agreement wherein they agreed to let Continental use their oil production equipment rent-free with the understanding that all signers of the agreement were required to do likewise, when in fact, appellee had secretly released another leasehold owner from the rent-free provision and was allowed to take most of such equipment off the land. Count Two seeks damages against Continental and W. H. Doran because of their alleged failure to conduct and maintain the secondary recovery operations in good faith, and in a prudent manner, and in accordance with the Unitization Agreement. Count Three seeks exemplary damages against Continental in that its wrongful acts complained of in Count One were willful and fraudulent. Count Four seeks damages against Doran and Pensco, Inc. for conversion through wrongful production and sale of oil that did not belong to them. Count Five seeks exemplary damages against Doran because what he did was willful and fraudulent. Count Six seeks damages against Continental and Doran for injury to the land of one of the plaintiffs. Count Seven seeks to remove the Unitization Agreement as a cloud on plaintiffs' title. Count Eight seeks a declaratory judgment declaring the rights and legal relationships of the parties.

2. Plaintiffs' pleading pertaining to fraud alleged that defendant represented to them that all lease owners and operators were being required in the transaction to contribute the right of use and possession of, or in practical effect, to loan their wells and lease equipment, rent-free, to defendant for the proposed operation; that plaintiffs were promised equal treatment; that such representations were false and fraudulent in that defendant did not intend to comply with such representations; that, in actuality, the Bering group were being given a more favorable deal in that Bering was assured in advance that it could remove and use all of its surface lease equipment and that upon expiration of the need for the leases, Bering could either withdraw the casing and plug the wells or have Continental do so in return for the casing in the well; that the deal with Bering was carefully concealed from plaintiffs; and plaintiffs only signed the Unitization Agreement because of their reliance on the equal treatment representation; that the representation was material because the right of use of plaintiffs' surface and well operating equipment was of great value to plaintiffs; plaintiffs did not discover the fraud until many years later when they were examining, in discovery proceedings, the files of a subsequent unit operator (Doran); that such misrepresentations of defendant was a cause of great loss and damage to plaintiffs.

Plaintiffs relied upon such representations in subsequently entering into the Unitization Agreement. (5) Plaintiffs suffered· a loss of their equipment as a consequence of such representations.

Defendant asserts that as a matter of law there was no fraud; that defendant made no misrepresentations of any material fact; the alleged representations, if any, were simply promises relating to future events and plaintiffs have established no intent to defraud on the part of defendant; that under the Unitization Agreement defendant had the absolute right to do what it did. They further assert that any cause of action that plaintiffs may have is barred by the statute of limitations.

Although defendant factually disputes virtually every allegation and contention made by plaintiffs, it also asserts that even if we accept as true all such allegations and contentions, there still would be no fraud; that its conduct was pursuant to and consistent with the Unitization Agreement and was, therefore, lawful.

In this connection defendant relies particularly on that portion of the Unitization Agreement which provides as follows:

"Assignors expressly reserve and except from this assignment and conveyance title to all such wells and equipment; however, the right of use and possession of such wells and equipment . . . are transferred to Continental hereunder, for the period of time that, in the sole discretion of Continental, any such well and equipment may be deemed to be useful in the operations on the Unitized Area and the production of Unitized Substances, or until the termination of this agreement, whichever is the earlier date."

Defendant asserts that under this provision, it could use whatever equipment it deemed useful in the operation of the unit and release all or any part of such equipment at any time. Plaintiffs do not particularly disagree with this contention but as-sert that this contention misconstrues the thrust of their suit for fraud. The gist of plaintiffs' action for fraud is that the Bering group had been secretly released in advance from the use provision, and knew at the time that it signed the Unitization Agreement that it would not be subject to this use provision and in actuality could retain and remove their surface lease equipment; that plaintiffs were not given an equal deal with the Bering group, although they both executed the same Unitization Agreement; that the use of their equipment was of material value to them; that in their early negotiations with defendant pertaining to the Unitization Agreement, plaintiffs attempted to retain use of such equipment; and that they only agreed to such use after they had been told by Continental that they could not retain their equipment on the lease because defendant was going to form a Unitization Agreement containing other lease operators and that everyone was going to be treated the same; that had they known that the Bering group had a different deal, plaintiffs would not have entered into such Unitization Agreement.

Plaintiffs rely basically on the hereinafter set forth summary judgment evidence in support of their cause of action for fraud:

(1) Letter from defendant to J. C. Wynne of the Bering group dated October 3, 1962, the pertinent part of which reads as follows:

"In keeping with our previous correspondence on our proposed waterflood we are prepared to make you the following proposition. You may remove your surface lease equipment, including pumps, tanks, tubing, rods, etc. leaving only the two wells with casing intact. In this way you can realize your salvage possibilities now and still share in the unit production as previously outlined to you. . . . Your advantages under this proposal became readily apparent, and at such time as we no longer need these leases you may either withdraw your

casing and plug the wells or we will plug them for you in return for the casing in these two wells. Please give this proposal your serious consideration and let us have your favorable response."[3]

(2) Affidavit of J. C. Wynne, the applicable part of which is as follows:

"McKitterick then wrote me the letter of October 3, 1962, (Exhibit J). I had further corresponded with Continental and others up to October 19, 1962, (Exhibit P) in which I accepted Continental's proposal on behalf of our group. At this point, McKitterick, as of October 3rd, had offered to allow us to remove our surface lease equipment, including pumps, tanks, rods, etc. leaving only the wells and casing intact. He also offered to allow us to withdraw our casing and plug the wells or have Continental plug them for us in return for the casing in the two wells. I accepted that. With the acceptance of that proposal by me, I had a firm deal with Continental that our surface equipment was not to go into the waterflood and we would be protected as to the plugging obligation, as provided in such letter."

(3) Affidavit of H. S. Finkelstein, president of Susanoil, Inc., the pertinent parts pertaining to fraud which may be summarized as follows: (a) On or about September 19, 1962, Continental represented to plaintiffs that all well owners in the proposed Velma (Escondido) Field would be equally treated by Continental respecting the assignment to Continental of the use of and possession of well operating equipment; (b) such representation was made with the intent on the part of Continental to induce plaintiffs to execute the Unitization Agreement and thereby assign their property, including leases, the use of 11 oil wells, and the use of well operating equipment rent-free to Continental; (c) plaintiffs relied upon Continental's representations in executing the Unitization Agree-

ment in November, 1962; (d) the representations were continued in the sense that every written agreement or memorandum explaining the written agreement indicated that all well owners were in fact being treated equally in contractual arrangements; (e) such representations were false in that at the time defendant delivered the Unitization Agreement to plaintiffs on October 16, 1962, it had secretly offered to another operator (Bering group) a release of Bering's equipment with certain further well plug considerations by letter of October 3, 1962; (f) the false representations were material to plaintiffs in that they could have either used such well equipment or sold it; (g) such representations caused damages to plaintiffs because their equipment, instead of being released, was tied up in the unitization for eight years and much of it was damaged, lost or stolen during the period; (h) plaintiffs did not discover and had no notice that the representations were untrue until in 1971 when certain discovery documents were produced revealing the side agreement.

Finkelstein further states in such affidavit that commencing about the end of 1961, plaintiffs were contacted by Continental in connection with the proposed waterflood operation and negotiations were carried on for an extended period of time; that during such negotiations plaintiffs insisted that they would retain their well operating equipment, including pumping units, pumps and other equipment; that in August, 1962, Continental indicated that one phase of the agreement would be that all operators assign the leasehold interest to Continental, with the right to use wells and producing equipment presently on the property; that plaintiffs went into the September agreement with Continental trying to make a deal whereby they would retain surface equipment, including pumps, pumping units, tubing, rods and other removable well equipment; that at such time plaintiffs were told in substance that everyone—all

---

3. It appears from the summary judgment evidence that this proposal was accepted on October 19, 1962, by the Bering group.

well equipment owners—were being called upon to agree to commit the use and possession of their well equipment presently located on the leases to Continental; that plaintiffs were assured in substance that everyone would be treated equally with regard to committing the use and possession of well operating equipment to Continental for the proposed waterflood operation; that plaintiffs would not be allowed to take any equipment off because everyone was being treated the same (no exceptions to any well owners); that plaintiffs finally agreed to leave everything there since everyone was being treated the same; that the agreement that was thereafter submitted to them showed on its face that everyone was transferring their wells without any reservations and were being treated exactly alike in the contractual agreement; plaintiffs never had any occasion to suspect that the fact was otherwise prior to the discovery of undiscovered papers in the discovery proceedings in May, 1971.

A party who moves for a summary judgment has the burden of establishing his right thereto as a matter of law and all doubts as to the existence of a genuine issue as to a material fact must be resolved against the moving party. Campbell v. Avinger, 505 S.W.2d 788 (Tex.1974); Gibbs v. General Motors Corporation, 450 S.W.2d 827 (Tex.1970); Great American Reserve Insurance Company v. San Antonio Plumbing Supply Company, 391 S.W.2d 41 (Tex.1965).[4] It is settled that the question on appeal and in the trial court is not whether a summary judgment proof raises fact issues with reference to essential elements of a cause of action, but whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the cause of action. The burden of proof is on the movant and all doubts as to the existence of a genuine issue of fact are resolved against him. All conflicts in the evidence are disregarded and the evidence which tends to support the position of the party opposing the motion is accepted as true. Farley v. Prudential Insurance Company, 480 S.W.2d 176 (Tex.1972).

The authorities announce the general rule that to constitute actionable fraud it must appear: (1) that a material representation was made; (2) that it was false; (3) that when the speaker made it, he knew it was false or made it recklessly without any knowledge of the truth and as a positive insertion; (4) that he made it with the intent that it should be acted upon by the party; (5) that the party acted in reliance upon it; (6) that he thereby suffered injury. Wilson v. Jones, 45 S.W.2d 572 (Tex.Comm'n App.1932, holding approved): 25 Tex.Jur.2d, Fraud and Deceit § 13 (1961).

Article 4004, Vernon's Ann.Tex.Rev. Civ.St. (1966),[5] provides as follows:

"Actionable fraud in this State with regard to transactions in real estate or in stock in corporations or joint stock companies shall consist of either a false representation of a past or existing material fact, or false promise to do some act in the future which is made as a material inducement to another party to enter into a contract and but for which promise said party would not have entered into said contract. Whenever a promise thus made has not been complied with by the party making it within a reasonable time, it shall be presumed that it was falsely and fraudulently made, and the burden shall

---

4. In a summary judgment proceeding, the burden of proof is on the movant and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. All conflict of evidence is disregarded and the evidence which tends to support the position of the party opposing the motion is accepted as true. Evidence which favors the movant's position is not considered unless it is uncontradicted. 391 S.W.2d 41 at 47.

5. Article 4004 was reenacted in 1967 as Section 27.01 of the Tex.Bus. & Comm.Code Ann., V.T.C.A. (1968).

be on the party making it to show that it was made in good faith but was prevented from complying therewith by the act of God, the public enemy or by some equitable reason. All persons guilty of such fraud shall be liable to the person defrauded for all actual damages suffered, the rule of damages being the difference between the value of the property as represented or as it would have been worth had the promise been fulfilled, and the actual value of the property in the condition it is delivered at the time of the contract. All persons making the false representations or promises and all persons deriving the benefit of said fraud, shall be jointly and severally liable in actual damages, and in addition thereto, all persons wilfully making such false representations or promises or knowingly taking the advantage of said fraud shall be liable in exemplary damages to the person defrauded in such amount as shall be assessed by the jury, not to exceed double the amount of the actual damages suffered."

■ The gist of the fraud in cases involving promises made with no intention to perform is not breach of the promise, but the fraudulent intent of the promisor, the false representation of an existing intention to perform where such intent is in fact non-existent, and the deception of the

promisee by such false promise. 37 Am. Jur.2d, Fraud and Deceit § 68 (1968).

■ Although defendant contends that the alleged representations, if any were made, were simply promises relating to a future event and not actionable, plaintiffs assert that even presupposing that defendant really intended on September 13, 1962, to comply with its equal treatment representation, it was entirely aware by October 3, 1962, that such statement was false and that a separate and better bargain was being offered by it to Bering. Knowing this, Continental owed a legal duty to disclose the Bering arrangement to plaintiffs before closing the transaction and accepting the assignment. See Stevens v. Marco, 147 Cal.App.2d 357, 305 P.2d 669, 682 (2nd District Division 2, 1956).[6]

■ In a summary judgment proceeding, if the affidavits or other summary judgment evidence raises a fact issue as to fraud, it is improper to grant a summary judgment. Bates v. First National Bank of Waco, 502 S.W.2d 181, 184 (Tex.Civ. App.—Waco 1973, no writ); Abraham v. Amoco Production Company, 498 S.W.2d 404, 410 (Tex.Civ.App.—Waco 1973, no writ); Farnsworth v. Dolch, 488 S.W.2d 531 (Tex.Civ.App.—Waco 1972, writ ref'd n.r.e.); Young v. Texas Employers Insurance Association, 488 S.W.2d 551 (Tex.Civ.App.—Waco 1972, no writ);

6. " ' "Deceit may be negative as well as affirmative; it may consist in suppression of that which it is one's duty to declare, as well as in the declaration of that which is false." ' Gillespie v. Ormsby, 126 Cal. App.2d 513, 527, 272 P.2d 949, 958. In his work on Torts (2d ed.), Dean Prosser states: 'One who has made a statement and subsequently acquires new information which makes it untrue or misleading must disclose such information to anyone whom he knows to be still acting on the basis of the original statement.' (P. 534 [272 P.2d 949].) Section 551(2) of the Restatement of Torts reads: 'One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated * * * (b) any subsequently acquired information which he recognizes as making untrue or

misleading a previous representation which when made was true or believed to be true.' Comment (f) relating to clause 2(b), supra, states: 'One who having made a representation which when made was true or believed to be so remains silent after he has learned that it is untrue and that the person to whom it is made is relying upon it in a transaction with him is morally and legally in the same position as if he knew that his statement was false when made.' It is the prevailing law that one who learns that his statements are acted upon, to disclose the new conditions to the party relying on his original representations. Childress v. Nordman, 238 N.C. 708, 78 S.E.2d 757, 761; Chilson v. Houston, 9 N.D. 498, 84 N.W. 354; Porter v. Beattie, 88 Wis. 22, 59 N.W. 499; McGinn v. McGinn, 50 R.I. 236, 146 A. 636, 638."

Dudley v. Lawler, 468 S.W.2d 160 (Tex. Civ.App.—Waco 1971, no writ); 26 Tex. Jur.2d, Fraud and Deceit § 140 (1961).

█ In our opinion, the summary judgment evidence raises disputed material fact issues including (a) whether defendant represented to plaintiffs that they would be given equal treatment with all other owners of well equipment with regard to the transfer and assignment of their well operating equipment; (b) whether such representation was false; (c) whether at the time defendant made such representation that it knew it was false or subsequently discovered its falsity prior to consummating its transaction with plaintiffs; (d) whether plaintiffs relied upon such representation in executing the Unitization Agreement; (e) whether plaintiffs suffered any injury as a result thereof.

Defendant asserts in any event, any cause of action which plaintiffs may have is barred by the statute of limitations.[7] In support of such contention, it urges that plaintiffs' pleadings show on their face that the alleged fraud on which the action is founded occurred in 1962 but was not discovered until 1971, when discovery proceedings were instituted.

Defendant advances two basic arguments (1) that the evidence discloses that Finkelstein made a bid for the Velma (Escondido) Field waterflood unit in 1967, and that the bid packet which Finkelstein obtained from Continental and on which he made his bid contained this statement: "All material other than that listed above is the property of Susanoil Company (Finkelstein) on loan to Continental Oil Company and must be returned when the waterflood control is terminated." Defendant asserts that it is clear from the total language that there was no equipment of any type or character whatsoever belonging to the Bering group on the Velma (Escondido) unit at the time Continental solicited such bids and at the time Finkelstein received the copy of the bid proposal from Continental; and at this time, plaintiffs knew or reasonably should have known that all of the Bering equipment had been removed. (2) It additionally asserts that there are other factors which should have alerted plaintiffs and put them on notice that the Bering group had removed their equipment; that in 1963, a substantial portion of the Bering equipment was removed and that its removal was open and obvious, done in plain view on two highly travelled public roads and visible to any passer-by and that the absence of such equipment was clearly open and obvious from these public roads and certainly obvious to anyone on the leases; that in 1964, Finkelstein travelling with an employee of Conoco passed within a short distance of the Bowen and American Legion leases and that since the equipment had been removed by this time, Finkelstein probably saw it or should have noticed the absence of such equipment.

Finkelstein, in his controverting affidavit, categorically denied that he had any knowledge of the removal of any of the equipment until May, 1971. In such affidavit, he states positively that he was not present when any of the equipment was removed from such leases and did not see any of the well equipment being removed; that he lives in Houston, some 200 miles from the Velma (Escondido) Field and that he had no occasion, at any time, to observe the well equipment on the Bowen and American Legion leases.

█ Assuming plaintiffs had seen that all of the Bering group's well equipment had been removed, such removal would not necessarily put plaintiffs on notice that a secret agreement had been made with the Bering group prior to the execution of the Unitization Agreement in 1962 whereby they could remove their well operating equipment. Plaintiffs could logically assume that the removal had been pursuant to the Unitization Agreement which gave

7. Defendant relies on the two year statute of limitations.

**238**

defendant the power to release any equipment from the use provision and allow its removal at any time.[8]

■ As a general rule, in suits for relief against fraud and deceit, the statute of limitations does not begin to run until the complainant has discovered the fraud or has learned facts sufficient to put a person of ordinary prudence on inquiry which, if pursued, would lead to discovery. 37 Tex. Jur.2d, Limitation of Actions § 69 (1962), and cases cited therein. It is clear that fraud prevents the running of the statute of limitations until discovered or by reasonable diligence might have been discovered. Courseview, Inc. v. Phillips Petroleum Company, 158 Tex. 397, 312 S.W.2d 197 (1957); Glenn v. Steele, 141 Tex. 565, 61 S.W.2d 810 (1933); Bush v. Stone, 500 S.W.2d 885, 889 (Tex.Civ.App.—Corpus Christi, 1973, writ ref'd n. r. e.).

■ The discovery of fraud or what constitutes reasonable diligence to discover fraud is a question of fact. Ruebeck v. Hunt, 142 Tex. 167, 176 S.W.2d 738 (1944); Crow v. Crow, 485 S.W.2d 928, 930 (Tex.Civ.App.—Waco, 1972, no writ). In a summary judgment proceeding, if the affidavits or other summary judgment evidence raises a fact issue as to fraud, a summary judgment should not be granted. Crow v. Crow, supra; Farnsworth v. Dolch, supra; Young v. Texas Employers Insurance Association, supra; Dudley v. Lawler, supra.

■ The summary judgment evidence does not establish that plaintiffs' cause of action for fraud was barred by limitations as a matter of law.

We have concluded that the summary judgment for defendant was improperly granted. The judgment is reversed and the cause remanded to the trial court for a new trial.

8. "At any time, and from time to time, Continental may return any well or other equipment shown on the inventory to the owner thereof."

BARROW, Chief Justice (concurring).

I concur that the summary judgment proof does not establish as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of appellants' cause of action.