Affirmed and Memorandum Opinion filed August 2, 2005









Affirmed and Memorandum Opinion filed August 2, 2005.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00709-CV

____________

 

ALBERT LEE GIDDENS, Appellant

 

V.

 

JARRETT HUFFMAN, Appellee

 



 

On Appeal from the County
Civil Court at Law Number One

Harris County, Texas

Trial Court Cause No. 792,126

 



 

M E M O R A N D U M   O P I N I O N

Albert Lee Giddens appeals from a judgment
entered against him in favor of Jarrett Huffman, awarding damages of
$19,000.  Giddens raises five issues in
which he asserts that the trial court erred in finding: that he was sued in the
correct capacity; that the Statute of Frauds did not apply; that the evidence
was sufficient to prove a standard referral fee in Pasadena, TX; and that
$38,000 was the referral amount to be divided among the parties.  We affirm.   








                                                     Background

In 1998, Giddens and Huffman entered into
an agreement whereby Huffman would begin to refer his personal injury cases to
Giddens in exchange for a referral fee computed as a percentage of attorney=s fees recovered
from the cases.  Huffman testified that
the agreed-upon percentage of referral fees was 50%.  In July of 2000, Huffman referred LaWanda
Barnhill to Giddens.  Giddens testified
that at the time of the referral, he was unaware that Huffman had referred the
case.  In June 2002, the Barnhill case
settled for $115,000 and Giddens received 45%, or $51,750, in attorney
fees.  Giddens did not pay Huffman a
referral fee at the time the case settled. 


Some time later, Huffman discovered
through Barnhill that her case had settled. 
Huffman and John Morgan, a mutual acquaintance of Giddens and Huffman,
then contacted Giddens and questioned him about the settlement of the Barnhill
case.  During the course of the
conversation, Giddens allowed that Huffman had Asome money coming
on [the Barnhill case].@ 
Giddens did not state the exact amount that Huffman had Acoming@ during the
conversation.  After further pressure
from Huffman, Giddens eventually forwarded him a check in the amount of $5,175,
or 10% of the total fee he received from the Barnhill case.  Huffman did not cash the check; instead, he
responded with a demand letter, seeking 50% of the amount of attorney=s fees Giddens had
received.  Huffman waited 30 days from
the date of the demand letter and then filed suit for $25,875, or 50% of the
attorney=s fees Giddens
received from the Barnhill settlement.  

Following a bench trial, the court found
that Huffman had sued Giddens in the proper capacity; that the Statute of
Frauds did not apply; that 50% is the standard referral fee in Pasadena, Texas Aas between the
parties@; and that the
base amount of the settlement was $38,000. 
On that basis, the trial court granted judgment against Giddens in the
amount of $19,000.           








                                                        Capacity

In his first issue, Giddens argues that
the trial court erred in finding that he was sued in the proper capacity as an
individual; Giddens claims that he should have been sued as Albert Lee Giddens,
P.C. This contention is essentially an attack on the legal sufficiency of the
trial court=s finding that Giddens was sued in the
proper capacity.  We review challenges to
the sufficiency of the evidence under the usual standards of review.  See Volkswagon of Am. v. Ramirez, 159
S.W.3d 897, 903 (Tex. 2004); IKON Office Solutions, Inc. v. Eifert, 125
S.W.3d 113, 123B24 (Tex. App.CHouston [14th
Dist.] 2003, pet. denied).

As part of Giddens=s original answer
to Huffman=s claims, Giddens filed a verified denial
pursuant to Tex. R. Civ. P. 93(2) alleging that he had not been sued in the
proper capacity.  Giddens asserts that
this pleading automatically created a defect of parties that was fatal because
it went uncorrected by Huffman.  As
support for the proposition that a failure to respond to a Rule 93(2) plea
creates a defect of parties, Giddens cites Gunn v. Harris Methodist
Affiliated Hosp., 887 S.W.2d 248, 249 
(Tex. App.CFort Worth 1994, writ denied).  Gunn simply does not stand for such a
proposition.  








In Gunn, the defendant hospital
filed a sworn denial claiming that it was not liable in the capacity in which it
was sued and, separately, that there was a fatal defect of the parties.  Id. 
Contemporaneously, the hospital filed a summary judgment motion
supported by summary judgment evidence asserting that it did not own or operate
the premises on which the plaintiff was injured.  Id. 
The plaintiff failed to timely respond to the summary judgment
motion.  The defendant hospital did not
prevail on the basis of merely filing a Rule 93(2) pleading to which the
plaintiff did not respond.  Rather, the
hospital moved for summary judgment and established as a matter of law, by
competent and undisputed evidence, lack of capacity.  The trial court granted summary judgment in
favor of the hospital.  Id.  The court of appeals affirmed.  Id at 251.  There is no case in Texas which stands for
the proposition that a failure to respond to a verified denial of capacity
results in a fatal defect to a party=s claims; instead,
Rule 93(2) is merely a procedural hurdle a party must satisfy in order to
properly challenge capacity.  See
Pledger v. Schoellkopf, 762 S.W.2d 145, 146 (Tex. 1988) (per curiam). 

In addition to filing a verified pleading,
the party asserting that it has not been sued in the proper capacity must prove
that fact.  See Seth v. Meyer, 730
S.W.2d 884, 885 (Tex. App.BForth Worth 1987,
no writ) (holding that defendant had failed to meet his burden in proving that
he was not personally liable).  Once the
party properly raises the issue by satisfying Rule 93(2) and proving the facts
asserted, like any objection, the party must obtain a ruling from the judge on
the issue to preserve error on appeal.  See
Tex. R. App. P. 33.1.

At trial, both Giddens and Huffman testified
as to the capacity issue.  Huffman
testified that he had no knowledge of the P.C.=s existence prior
to Giddens=s having filed the verified denial; that
he had never seen Giddens=s letterhead that used the P.C. name; and
that the check sent to Huffman did not indicate that Giddens was part of a P.C.
or an L.L.P.  Huffman also testified
that, in response to discovery requests, Giddens identified ASmyrl &
Giddens, L.L.P.@ and AAlbert Lee
Giddens, P.C.@ as potential parties rather than correct
parties to the lawsuit.  

We find that the above evidence is
sufficient to support the trial court=s finding on
capacity.  Appellant=s first issue is
overruled.

                                                 Statute
of Frauds

In his second issue, Giddens argues that
the referral fee agreement with Huffman was subject to the Statute of Frauds
and therefore, was required to be in writing. 
Giddens references evidence that the referral fee agreement between him
and Huffman took place in 1998 and the referral that is the subject of this
dispute occurred in 2001.  Giddens urges
that because this period of time was longer than one year, the agreement was
required to be in writing.








Giddens=s argument
misconstrues the Statute of Frauds.  That
statute requires that an agreement that cannot be performed in one year must be
in writing; otherwise, it is unenforceable. 
Tex. Bus. & Com. Code Ann.
' 26.01.  Courts have interpreted the statute so that
agreements which cannot be performed within one year from the date of
the agreement must be in writing.  Niday
v. Niday, 643 S.W.2d 919, 920 (Tex. 1982) (per curiam).  The actual period of performance is irrelevant.  In Niday, the Texas Supreme Court made
clear that the issue is not the actual period of performance; rather, the
crucial inquiry is whether the agreement can possibly be performed within a
year determined at the time the agreement is made.  Id.  The court further stated the general rule that
if the parties do not fix the time of performance, and the agreement itself
does not indicate that it cannot be performed in one year, then the contract
does not violate the statute.  Id.  But, if the period of performance is not
fixed, and the evidence conclusively proves that the agreement cannot be
performed in one year, then the Statute of Frauds will apply.  Id. 


There was no evidence that the parties in
this case fixed the time of performance or that the agreement itself indicated
that it could not be performed in one year. 
There was no evidence that the agreement could not have been performed
in one year.  As such, the agreement was
not subject to the Statute of Frauds. 
Issue number two is overruled.

                                             Standard
Referral Fee 

In his third and fourth issues, Giddens
raises arguments regarding standard referral fees in Pasadena, Texas.  In his third issue, Giddens argues that
expert testimony regarding standard referral fees should have been barred by Tex. R. Civ. P. 193.6.  In his fourth issue, Giddens challenges the
legal and factual sufficiency of the evidence to support the court=s Afinding a standard
referral fee.@  








At the conclusion of the trial, the trial
court found that  A50 percent is the
standard fee in Pasadena, Texas, for referral fee as between the parties.@  (emphasis added).  We interpret this to be a finding of what the
agreement was between the parties, and not as a finding of the standard
referral fee in Pasadena, Texas.  Because
the complained-of expert testified only as to the standard referral fees in
Pasadena and did not offer evidence as to what the parties actually agreed, it
is immaterial whether the trial court erred in admitting the testimony.

Even if we interpret the court=s pronouncement as
a finding of the standard fee in Pasadena, Texas, as opposed to a finding of
the fee as between the parties, that finding is immaterial  to the judgment and should be disregarded.  Standard referral fees are only of import in
this case as extrinsic evidence of what the intended agreement was between the
parties with respect to the referral fee amount.  See Commercial Union Ins. Co. v. Martinez,
635 S.W.2d 611, 614 (Tex. App.CDallas 1982, writ
ref=d n.r.e.)
(discussing importance of custom as extrinsic evidence).  Extrinsic evidence of the terms of an
intended agreement should be allowed only when the terms are ambiguous.  See Texas Gas Exploration Corp. v.
Broughton Offshore Ltd. II, 790 S.W.2d 781, 785 (Tex. App.CHouston [14th
Dist.] 1990, no writ) (holding that testimony regarding custom is admissible
when a contract=s terms are ambiguous).  The primary inquiry in this case is the
parties= intentions as to
the referral fee amount.

Huffman testified at trial that the
parties agreed on a 50% referral fee. 
Giddens did not directly dispute that the agreed referral fee amount was
50% but instead, chose to circumstantially attack the fee amount by offering
evidence of the standard referral fee in Pasadena, Texas.  In fact, Giddens admitted that he normally
gives a 50% referral fee.  Thus, the only
evidence we have as to the intended agreement between the parties as to
referral fees is the uncontroverted evidence by Huffman that the parties agreed
to a 50% fee.  As such, the terms of the
agreement are unambiguous, and extrinsic evidence was unnecessary.[1]
We overrule Giddens=s third and fourth issues.      








                                   Base Amount
of the Settlement Fee

In his fifth and final point of error,
Giddens argues that the evidence is legally and factually insufficient to
support the court=s finding that $38,000 was the base amount
from which the referral fee would be apportioned. 

The Barnhill case ultimately settled for
$115,000.  Giddens testified that Mrs.
Barnhill was unwilling to pay the 45% contingent fee despite the terms of their
contract.  Giddens further testified that
he came to an agreement with Mrs. Barnhill that he would take his normal 45%
attorney=s fee while
collapsing into that total certain fees for unrelated criminal matters.  Giddens argued at trial that because the
total fees he received from his client, $51,000, included compensation for the
criminal matters, a portion of that total should have been allocated to the
criminal matters and deducted from the base amount to be split with
Huffman.  Giddens offered evidence at
trial as to the exact fees for some of the criminal matters.  The judge ultimately deducted $13,000 for the
criminal matters, leaving a total amount of $38,000 as the base amount from
which Huffman=s referral fee was apportioned. 








Both parties are uncertain as to how the
judge arrived at the figure of $38,000; however, the trier of fact has the
discretion to award damages within the range of evidence presented at
trial.  Anderson, Greenwood & Co.
v. Martin, 44 S.W.3d 200, 219 (Tex. App.CHouston [14th
Dist.] 2001, pet. denied).  Huffman
offered evidence that the amount of attorney=s fees from which
his referral fee should have been apportioned was $51,000.  Giddens offered evidence of $13,750 for the
criminal matters which he claims should have been deducted from the total
amount of his settlement fee.[2]  Clearly the judge was within the range of
evidence presented at trial in arriving at the figure of $38,000.  See id.  We cannot speculate as to the manner in which
the trier of fact reached its award.  Peterson
v. Reyna, 908 S.W.2d 472, 476 (Tex. App.CSan Antonio 1995),
modified on other grounds, 920 S.W.2d 288 (Tex. 1996) (per curiam).  Furthermore, we are not permitted to
disregard the trier of fact=s damages award on
the basis that the trier of fact=s reasoning in
arriving at its figure is unclear.  Anderson,
Greenwood & Co., 44 S.W.3d at 219. 
As a result, Giddens=s fifth issue is
overruled. 

We affirm the
judgment of the trial court.  

 

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

Judgment
rendered and Memorandum Opinion filed August 2, 2005.

Panel
consists of Chief Justice Hedges, Justice Frost, and Senior Chief Justice Paul
C. Murphy.*











[1]  A large portion
of the trial was devoted to testimony regarding standard referral fees in
Pasadena, Texas.  It is unclear why this
evidence was allowed, especially considering the judgment which found that A50 percent is the standard fee in Pasadena, Texas, for
referral fee as between the parties.@





[2]  Huffman has
not cross-appealed on the basis that he should have been awarded 50% of the
total fees, rather than 50% of $38,000. 
Therefore, because Huffman does not raise this issue, we do not address
it.





*  Senior Chief
Justice Paul C. Murphy sitting by assignment.